Jon T. Pearson (10182)
Jenapher Lin (14233)
HOLLAND & HART LLP
9555 Hillwood Drive, 2nd Floor
Las Vegas, NV 89134
702.669.4600
702.669.4650 fax
jtpearson@hollandhart.com
jlin@hollandhart.com

*Counsel for Plaintiff-Counterdefendant
NLRK LLC*

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| NLRK LLC,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>Indoor Ag-Con LLC; Nancy Hallberg; Kris Sieradzki; and Brian Sullivan,<br><br>　　　　　Defendants.<br><br>And All Related Matters. | Case No. 3:21-cv-00073-LRH-WGC<br><br>**Stipulated Protocol for Production of Electronically-Stored Information and Hard-Copy Documents** |

　　　　Plaintiff-counterdefendant NLRK LLC ("Plaintiff"), and defendants-counterclaimants Indoor Ag-Con LLC, Nancy Hallberg, Kris Sieradzki, and Brian Sullivan ("Defendants," and together with Plaintiff, "Parties"), stipulate that this protocol, subject to the Court's approval, will govern the search, processing, and production of Electronically-stored information ("ESI") and Hard-Copy Documents during the pendency of this litigation.

　　　　The Parties do not intend by this protocol to waive their rights to the attorney-work-product privilege. The Parties preserve their attorney-client privileges and other privileges, all of which are preserved and protected to the fullest extent provided by law, and there is no intent by this ESI Protocol, or the production of documents in accordance with this ESI Protocol, to in any way waive or weaken these privileges. Documents produced are protected and covered by any protective order entered by this Court and orders of the Court effectuating same. The Parties do

1

not waive any objections to the discoverability, admissibility, or confidentiality of documents or ESI. Nothing in this Stipulation will be interpreted to supersede the provisions of any protective order governing confidentiality or privilege entered by the Court, unless expressly provided for in such an order. The Parties will comply with this ESI Protocol to the extent reasonably feasible. A Party is not required to comply with any aspect of this Protocol that is unreasonable or infeasible provided that it informs the other Parties in writing at or before the time of production as to why compliance with the Protocol is unreasonable or infeasible. In such instance, the Parties will meet and confer in good faith on reasonably feasible alternatives.

This Stipulation will govern the search for, processing of, and production of ESI and of Hard-Copy Documents after the execution of this ESI Protocol. The Parties agree to meet and confer regarding the applicability of this ESI Protocol to productions made before its execution.

Nothing in this Stipulation is intended to limit the Parties' obligations under the Federal Rules of Civil Procedure and this District's Local Rules. To the extent any disputes arise related to the production of ESI, and those disputes are not addressed by any of the agreements made here, they will be resolved according to the Federal Rules of Civil Procedure, this District's Local Rules, and other applicable orders, laws, and rules.

**1.    Definitions**

1.1.    "Requesting Party" refers to the Party that serves a request for the production of Documents.

1.2.    "Producing Party" refers to the Party upon whom a request for the production of Documents is served.

1.3.    "Document" or "Documents" means any writing however recorded, including handwriting, typewriting, printing, photographing, photocopying, transmitting by electronic mail or facsimile, and every other means of recording upon any tangible thing, any form of communication or representation, including letters, words, pictures, sounds or symbols or combinations thereof, and any record created thereby, regardless of the manner in which the record has been stored, and also specifically includes ESI and Hard-Copy Documents.

1.4. "Electronically-stored information" or "ESI" means any Document or Documents stored or transmitted in electronic form.

1.5. "Hard-Copy Document" means any Document existing in paper form at the time of collection.

1.6. "Native Format" refers to the format of ESI in which it was generated, or as used by the Producing Party in the usual course of its business and in its regularly conducted activities. For example, the Native Format of an Excel workbook is a .xls or .xslx file.

1.7. "Metadata" means the information associated with each Document that is identified in Attachment A.

1.8. "Optical Character Recognition" or "OCR" means the process of recognizing, and creating a file containing, visible text within an image.

1.9. "Hash Value" is a unique numerical identifier that can be assigned to a file, a group of files or a portion of a file, based on a standard mathematical algorithm applied to the characteristics of the text contained within the file or files.

1.10. "Confidentiality Designation" means the "Confidential" legend affixed to Documents, as defined by, and subject to, the terms of the Protective Order entered in this matter.

1.11. "Searchable Text" means the text extracted or generated using OCR from any Document that allows the Document to be electronically searched.

1.12. "Load Files" means electronic files provided with a production set of Documents and images used to load that production set into a Requesting Party's Document review platform.

1.13. "Include" and "Including" is construed to mean "include but not be limited to" and "including, but not limited to".

1.14. "All" and "each" will both be construed as all and as each.

**2. Identification of Responsive Documents**

2.1. The Producing Party may apply electronic searches to identify potentially responsive ESI. The Parties agree to meet and confer on a search protocol for such searches, comprising, as appropriate, (a) the custodians or sources of ESI that are to be searched; (b) the search terms to be applied against those custodians or sources; (c) the date range to be applied

against those custodians or sources; and (d) any other search criteria or methods to be used to identify potentially responsive ESI. If the Parties fail to reach agreement as to the search protocol, either Party may, but is not required to, bring the dispute to the Court for resolution. A Producing Party is not required to apply a search protocol to sources of ESI that are not reasonably likely to contain responsive ESI.

2.2. A Producing Party will provide reasonable "hit" counts of documents when negotiating search terms for email searches. Nothing in this paragraph requires a Producing Party to reveal information that constitutes attorney-work product in negotiating search terms for email searches.

2.3. The fact that the Parties agree to a search protocol does not preclude a Producing Party from reviewing potentially responsive ESI that is returned by the search protocol to make final determinations as to the responsiveness of the ESI and the privilege and other protections applicable to the ESI.

2.4. Where reasonable, a Producing Party may employ means other than the search protocol to identify responsive Documents or ESI.

2.5. If a Producing Party is aware of data that is not reasonably accessible because of undue burden or cost but is likely to contain non-duplicative, discoverable ESI, it will identify the source from which it claims the data is not reasonably accessible to the Requesting Party.

**3.     Meet and Confer**

3.1. The Parties will meet and confer to discuss any previously agreed-upon methodologies to be employed in producing ESI that require modifications, or in the event either Party wishes to employ new methodologies.

**4.     Processing Specifications for ESI**

4.1. <u>Metadata</u>. ESI will be processed in a manner that preserves the source native file and relevant metadata without modification, including their existing time, date, and time-zone metadata consistent with the requirements provided in this Stipulation. ESI items will be produced with all of the metadata and coding fields set forth in Attachment A, to the extent such metadata and coding fields exist and where reasonably feasible. This Stipulation does not create any

4

obligation to create or manually code fields that are not automatically generated by the processing of the ESI, or that do not exist as part of the original metadata of the Document; provided, however, that the Producing Party must populate, where possible, the (a) BegBates, (b) EndBates, (c) BegAttach, (d) EndAttach, (e) Custodian, (f) NativeFileLink fields, if applicable, (g) TextPath, (h) redaction status, and (i) confidentiality designation. These fields, listed at (a)-(i) in the immediately preceding sentence, should be populated for all produced ESI regardless of whether the fields can be populated under an automated process, unless impracticable. To the extent providing these metadata fields is unduly burdensome, the Parties will meet and confer to determine appropriate solutions.

4.2. <u>De-Duplication</u>. A Producing Party may remove Documents identified as duplicative based on MD5 or SHA-1 hash values of the full text of the Documents at the family level across custodians and sources. The de-duplication method(s) employed and any changes thereto should remain consistent across each production or otherwise be discussed and agreed to among the Parties. The Producing Party will produce a Metadata field for all produced Documents for which duplicate Documents were removed listing the Custodians that possessed a duplicate Document that was removed. The Producing Party will update this field no later than 10-calendar days following substantial completion of production. The above will not impose on a Party any obligation to produce duplicative documents.

4.3. <u>E-mail Threading</u>. The Parties are permitted to use commercially reasonable email threading tools to remove e-mails and their attachments where the contents of the e-mail and its attachments are wholly included within another e-mail that is not removed.

4.4. <u>De-NISTing</u>. Non-user-generated files may be removed from review and production using the list of non-user-generated files maintained by the National Institute of Standards and Technology (NIST). Additional culling of system files based on file extension may include: WINNT, LOGS, DRVS, C++ Program File (c), C++ Builder 6 (cpp), Channel Definition Format (cdf), Creatures Object Sources (cos), Dictionary file (dic), Executable (exe), Hypertext Cascading Style Sheet (css), JavaScript Source Code (js), Label Pro Data File (IPD), Office Data File (NICK), Office Profile Settings (ops), Outlook Rules Wizard File (rwz), Scrap Object, System

File (dll), temporary files (tmp), Windows Error Dump (dmp), Windows Media Player Skin Package (wmz), Windows NT/2000 Event View Log file (evt), Python Script files (.py, .pyc, .pud, .pyw), Program Installers.

4.5. <u>Embedded Objects</u>. Files that are embedded in other files ("Embedded Objects"), including email inline images and Microsoft Office embedded images, need not be extracted as separate files and treated as attachments to the parent Document provided that all content contained in the Embedded Object is contained and/or visible within the parent Document, to the extent it is produced.

4.6. <u>Searchable Text</u>. Text will be extracted directly from the native electronic file of ESI unless the Document requires redaction, is an image file or is any other native electronic file that does not contain text to extract (e.g., non-searchable PDFs), in which case Searchable Text may be created using OCR. Extracted text will include all comments, revisions, tracked changes, speaker's notes and text from Documents with comments or tracked changes, and hidden worksheets, slides, columns and rows. Extracted text from e-mails will include all header information that would be visible if the e-mail was viewed natively including: (a) the individuals to whom the communication was directed; (b) the author of the e-mail communication; (c) who was copied and blind copied on such e-mail; (d) the subject line of the e-mail; (e) the date and time of the e-mail; and (f) the names of any attachments.

4.7. <u>Exception Files</u>. The Parties will use commercially reasonable efforts to address Documents that present processing or production problems (including encrypted, unsupported, and/or protected files) ("Exception Files"). A Party is not required in the first instance to produce Exception Files it has been unable to resolve through commercially reasonable efforts, except that, upon reasonable request, the Producing Party will undertake reasonable efforts to locate passwords for specifically identified documents and to provide such passwords within 30-calendar days of the request. Exception Files that are attached to produced Documents will be produced as a Bates-stamped placeholder TIFF bearing a legend indicating the document is unable to be processed. If the Parties cannot reach agreement on the handling of Exception Files through the meet-and-confer process, the matter may be submitted to the Court for resolution.

4.8. <u>Compressed Files and Encrypted Files</u>. Compressed file types (e.g., .CAB, .GZ, .TAR, .Z, .ZIP) will be decompressed in a reiterative manner to ensure that a zip within a zip is decompressed into the lowest possible compression resulting in individual files.

**5.    Processing Specifications for Hard-Copy Documents**

5.1. <u>General</u>. To the extent the Parties agree on the production of any Hard-Copy Documents, such Hard-Copy Documents will be scanned as single-page TIFF images as they are kept in the ordinary course of business. The Producing Party will treat pages that are stapled or clipped together as a single document; otherwise the Producing Party need not attempt to identify what pages are logically part of the same document.

5.2. <u>Custodian Identification</u>. The Producing Party will utilize reasonable best efforts to ensure that paper records for a particular custodian or department-level custodian, which are included in a single production, are produced in consecutive Bates stamp order, to the extent reasonably feasible.

5.3. <u>Identification</u>. Where a Document or group of Documents has an identification spine, "post-it note," or any other label, the information on the label will be scanned and produced to the extent practicable.

5.4. <u>Hard-Copy Metadata</u>. For any produced Hard-Copy Documents, the Producing Party will, to the extent the information is reasonably available, provide metadata for each scanned document, including the: (a) beginning production number (i.e., the "Bates" number); (b) ending production number; (c) confidentiality designation; (d) custodian; and (e) page count.

5.5. <u>Searchable Text</u>. For any produced Hard-Copy Documents, the Producing Party will take reasonable steps to create Searchable Text using OCR.

5.6. <u>Storage</u>. During the pendency of this litigation, the Parties will make reasonable efforts to preserve the originals of all Hard-Copy Documents as to which there may be issues of legibility of all or any part of the production copy. Each party reserves the right to request to inspect such original documents of the opposing party or Parties, which request will not be unreasonably denied. If such request to inspect is denied, the party may seek relief from the Court.

**6. Production Format**

6.1. <u>General</u>. Except as otherwise provided herein, the Parties will produce Documents in B&W TIFF and Color JPG Format. Certain file types, such as spreadsheets (e.g., Excel, .csv), photographic images, audio/visual files (e.g., .wav, .mpeg, and .avi) will be produced in Native Format. A Requesting Party may request the production of Native Files of other Documents (e.g., images) where the production of the Native File is reasonably necessary to the Document's comprehension or use.

6.2. <u>TIFF Format</u>. All TIFFs produced by any party in this matter will be single-page Group IV TIFF format with 300 dpi quality with 1 bit depth or better. TIFF files will be named according to the corresponding Bates-numbered images. Page size will be 8.5 x 11 inches, unless in the reasonable judgment of the Producing Party, a particular item requires a different page size. All Documents that contain comments, deletions and revision marks (including the identity of the person making the deletion or revision and the date and time thereof), speaker notes or other user-entered data that the source application can display to the user will be processed such that all that data is visible in the image. All TIFF images will be branded in the lower right-hand corner with its corresponding Bates number, and in the lower left-hand corner with its Confidentiality Designation, if any, using a consistent font type and size. If the Requesting Party believes that a Bates number or Confidentiality Designation obscures the content of a Document, then the Requesting Party may request that the Document be produced with the Bates number in a different position.

6.3. <u>Bates Numbering</u>. Each TIFF image produced under this Stipulation should be assigned a Bates number that must: (a) be unique across the entire document production; (b) maintain a constant length of eight numeric digits (including 0-padding) across the entire production; (c) contain only alphanumeric characters, no special characters; and (d) be sequential within a given Document. The Producing Party will identify the Bates number range of each production in a cover letter or production log accompanying the production. If a Producing Party intentionally skips a Bates number or set of Bates numbers in a production, the Producing Party will identify and note the gap in the cover letter or production log accompanying the production.

6.4. <u>Native Format</u>. For Documents produced in Native Format, a Bates-stamped placeholder TIFF bearing a legend indicating the document is being produced in native format will also be produced in the same manner as other TIFFs. Native Files will have a file name that includes the Bates number and Confidentiality Designation. Any Party printing the Native File for use in this matter will append and use the placeholder TIFF as a cover sheet to the Native File at all times.

6.5. <u>Load Files</u>. Productions will include image load files in Opticon format and Concordance format data (.dat) files with reasonably available Metadata for all Documents. All Metadata will be produced in UTF-7 or UTF-8 with Byte Order Mark format.

6.6. <u>Text Files</u>. A single document-level text file containing the Searchable Text will be provided for each Document. The text file name will be the same as the Bates number of the first page of the Document with the Document extension ".txt" suffixed. File names will not have any special characters or embedded spaces. Searchable Text will be provided in UTF-8 or Western European (Windows) with Byte Order Mark format text. The .DAT load file will include a link to the corresponding text file.

6.7. <u>Databases, Structured, Aggregated or Application Data</u>. For requests in which responsive information is contained in a database or other structured or aggregated data source or otherwise maintained by an application, the Parties will meet and confer to determine an appropriate format for review and production. If the Parties cannot reach agreement, the matter may be submitted to the Court for resolution.

6.8. <u>Redactions</u>. Parties may redact information that is subject to the attorney-client privilege, work-product protection or any other protection from disclosure. Parties may also redact information that is personally or commercially sensitive so long as that information is not responsive to any agreed requests for production. Any redaction will state the reason for the redaction in the text of the redaction box, where reasonably feasible. The following Metadata will be excluded from redacted documents: Subject Line; File Name; and MD5 Hash. Redacted Documents will be identified as such in the Metadata.

6.9. <u>Redactions of Excel and PowerPoint files</u>. For Excel and PowerPoint type files that are printed to TIFF for redaction and redacted, the following printing options will be enabled:

- Excel Print to TIFF Options
- Unhide columns and rows
- Unhide worksheets
- Autofit columns and rows, settings to be over by columns first, and then down by rows
- Wrap text
- Print gridlines
- Do not apply Autofilter
- Display headings
- Display comments
- PowerPoint Print to TIFF Options
- Print notes pages
- Print hidden slides
- Print comments

6.10. The Producing Party will also make reasonable efforts to ensure that any spreadsheets produced only as TIFF images because of redactions are formatted so as to be legible. For redacted items which were originally ESI, all metadata fields noted in this protocol that do not contain privileged or protected information will be provided and will include all nonredacted data. A Document's status as redacted does not relieve the Producing Party from providing all metadata required herein that is not the subject of a claim of privilege or similar immunity from discovery.

6.11. <u>Color</u>. The Parties will produce black and white Documents in B&W TIF format, and color Documents in Color JPG format, where reasonably feasible. To the extent any color Documents are produced in black and white, upon reasonable request, the Producing Party will produce additional Documents in color on an as-needed basis to assist with readability.

6.12. <u>Parent-Child Relationships</u>. Parent-child relationships (the association between an attachment and its parent Document or between embedded Documents and their parent) will be

preserved through the production of an appropriate Metadata field. Parent-child relationships will also be preserved by assigning sequential Bates numbers to all items within the parent-child group, where reasonably feasible.

6.13. <u>Family Groups</u>. A Document and all other Documents in its attachment range, emails with attachments and files with extracted embedded OLE Documents all constitute family groups. Attachments that are entirely privileged may be excluded from production provided that a slipsheet with the placeholder "Document Withheld as Privileged" is produced.

6.14. <u>Production Media</u>. The Producing Party will use the appropriate electronic media (CD, DVD, secure FTP or other secure file transfer utility, hard drive or other mutually agreeable media) for its production, and will use high-capacity media to minimize associated overhead. Electronic delivery via secure FTP or other secure file transfer utility will be preferred, and the Producing Party will notify the Requesting Party in cases of non-electronic delivery of any productions. The Producing Party will label any physical media with the Producing Party, media volume name and Bates number range.

**7. Privilege Log**

7.1. The Producing Party will provide the Requesting Party with a log of the Documents fully withheld for privilege containing information sufficient to enable the Requesting Party to evaluate the claims made, including the following information to the extent reasonably available: Document Number, Custodian, Author/Sender, Recipient, CC Recipient, BCC Recipient, Date, Basis for Withholding (e.g., Attorney-Client Communication) and Document Description. The Producing Party will provide a privilege log no later than 30-calendar days following substantial completion of document discovery, and supplement that privilege log as necessary thereafter. After the substantial completion of document discovery, any supplement of the privilege log will be completed within 14-calendar days of the relevant production, where reasonably feasible.

7.2. The same Document Description may be used for multiple Documents (i.e., a categorical description) so long as the Producing Party has, in good faith, evaluated the Document

to ensure the Document Description accurately reflects the contents of the Document and is sufficient for the Receiving Party to fairly evaluate the claim of privilege or immunity.

7.3.  A single Document containing multiple e-mails in an e-mail chain may be logged as a single entry; however, upon reasonable request for specific documents, the Producing Party will provide information identifying each e-mail in the chain separately. A Document family (e.g., e-mail and attachments) may be logged as a single entry so long as the log entry references the attachment(s) and accurately describes both the e-mail and its responsive attachment(s).

7.4.  If any member of a family group is produced, all members of that group must also be produced, logged as privileged, or slip-sheeted as non-responsive, and no such member will be withheld from production as a duplicate.

7.5.  The Parties are not required to log privileged Documents created after the initiation of litigation in this matter on February 4, 2021.

**8.  Third-Party Documents and ESI**

8.1.  A Party that issues a subpoena upon any third party ("Issuing Party") after the execution of this ESI Protocol will include a copy of this ESI Protocol and any protective order agreed and/or entered in this litigation with the subpoena and state that the Parties in this litigation have requested that third parties produce documents in accordance with the specifications set forth herein.

8.2.  The Issuing Party will request that third parties produce the same documents to all Parties simultaneously. In the event that the third party fails to do so (as indicated by, among other means, failing to address both Parties in its production cover letter), the Issuing Party will produce a copy to all other Parties of any documents and ESI (including any metadata) obtained under subpoena to a third party in the same form and format as produced by that third party within three (3) business days of receipt from the third party, and may not use those documents in this Action until such production has been made.

8.3.  If a third-party production is not Bates-stamped, the Issuing Party will endorse its production with unique Bates prefixes and numbering scheme before reproducing them to all other Parties.

8.4. Nothing herein will impact third-party productions made before the execution of this ESI Protocol.

**9. General Provisions**

9.1. Any practice or procedure set forth herein may be varied by agreement of the Parties, which will be confirmed in writing, or by order of the Court.

9.2. The Parties will meet and confer to resolve any dispute regarding the application of this Protocol before seeking Court intervention

Dated: May 21, 2021

/s/ *Jon T. Pearson*
Jon T. Pearson
Jenapher Lin
HOLLAND & HART LLP
9555 Hillwood Drive, 2nd Floor
Las Vegas, NV 89134

*Counsel for Plaintiff-Counterdefendant NLRK LLC*

/s/ *Theresa Mains*
Theresa Mains
Jeffrey J. Whitehead
WHITEHEAD & BURNETT
6980 O'Bannon Drive
Las Vegas, NV 89117

*Counsel for Defendants-Counterclaimants Indoor Ag-Con LLC; Nancy Hallberg; Kris Sieradzki; and Brian Sullivan*

**Order**

**IT IS SO ORDERED**.

William G. Cobb
U.S. MAGISTRATE JUDGE

Dated: May 21, 2021

# Attachment A

| Metadata Field | Description |
| --- | --- |
| BEGDOC | Beginning control number assigned to each page/document |
| ENDDOC | Ending control number assigned to each page/document |
| BEGATTACH | Beginning bates number of attachment range |
| ENDATTACH | Ending bates number of attachment range |
| ATTNAMES | File names of attachments |
| DOCTYPE | Name of software used to open document |
| FILE NAME | Name of document (eDoc) |
| FILE EXTENSION | File extension (xls, doc, etc.) |
| SOURCE TYPE | Type of file (eDoc, Email, or Attachment) |
| FILE SIZE | Size of file in KB |
| ATTACHMENT COUNT | Number of attachments |
| PAGE COUNT | Number of pages (only for imaged documents) |
| TITLE/SUBJECT | Title, subject, or file name, in order of preference, of the document |
| SENDER | The sender of the document as reflected in the metadata associated with the document |
| RECIPIENT | The recipient of the document as reflected in the metadata associated with the document |
| CC | Names of copied recipients as reflected in the metadata associated with the document |
| BCC | Names of copied recipients who received blind copies of the document as reflected in the metadata associated with the document |
| CUSTODIAN | Name of the individual whose custodial file contained the document |
| ALL CUSTODIANS | Identifies all custodians sources for files excluded from production based on MD5 or SHA-1 hash de-duplication |
| DATESENT | The date sent of the document (if applicable) formatted as follows: MM/DD/YYYY with leading zeros as appropriate (e.g., 06/07/2009) |

| Metadata Field | Description |
| --- | --- |
| DATERECEIVED | The date received of the document (if applicable) formatted as follows: MM/DD/YYYY with leading zeros as appropriate (e.g., 06/07/2009) |
| TIMESENT | The time sent of the document formatted as follows: HH:MM (e.g., 10:24 p.m. or 22:24) |
| TIMERECEIVED | The time received of the document formatted as follows: HH:MM (e.g., 10:24 p.m. or 22:24) |
| DATECREATED | Date document was created |
| DATEMODIFIED | The date modified of the document formatted as follows: MM/DD/YYYY with leading zeros as appropriate (e.g., 06/07/2009) |
| CONVERSION INDEX | Email ID for email threads |
| LOCATION/FILE PATH | Original server location of data |
| CONFIDENTIALITY | Confidentiality endorsement |
| REDACTION | Redaction status ("Redacted" or Null) |
| MD5 HASH | Hash tag created during processing |
| NATIVELINK | Relative file path including file name to the associated native file |
| TEXTLINK | Relative file path included file name to the associated searchable text file |

16687577_v1

Holland & Hart LLP
9555 Hillwood Drive, 2nd Floor
Las Vegas, NV 89134