1

2

3

4

UNITED STATES DISTRICT COURT

5

DISTRICT OF NEVADA

6

* * *

7
NLRK, LLC,

Case No. 3:21-cv-00073-LRH-WGC

8
Plaintiff,

ORDER

9
v.

10
INDOOR AG-CON, LLC, et al.,

11
Defendants.

12

13      Before the Court is Plaintiff/Counter-Defendant NLRK LLC's ("NLRK") partial motion

14   to dismiss counterclaims (ECF No. 24). The Defendants/Counter-Plaintiffs Indoor Ag-Con, Nancy

15   Hallberg, Kris Sieradzki, and Brian Sullivan (collectively "Defendants")[1] filed a response (ECF

16   No. 31), to which NLRK replied (ECF No. 32). For the reasons articulated below, the Court grants

17   the motion in part and denies the motion in part.

18   **I.      BACKGROUND**

19      Indoor Ag-Con is a Nevada limited liability company that "hosts events relating to indoor

20   agriculture; growing crops in greenhouses, warehouses, and containers using hydroponic,

21   aquaponic, and aeroponic technologies." ECF No. 1 at 1–2; ECF No. 18 at 2–3. In early December

22   2018, the sole member of Indoor Ag-Con, NLRK, entered into a Membership Interest Purchase

23   Agreement ("Purchase Agreement") with Individual Counterclaimants.[2] ECF No. 1 at 2; ECF No.

24   18 at 3. In the Purchase Agreement, NLRK agreed to sell "one hundred percent (100%) of the

25   membership interest of" Indoor Ag-Con to Individual Counterclaimants. ECF No. 1-2 at 2. In

26

27   [1] Nancy Hallberg, Kris Sieradzki, and Brian Sullivan assert counterclaims that Indoor Ag-con is not a party to. Thus, Nancy Hallberg, Kris Sieradzki, and Brian Sullivan will be referred to as "Individual Counterclaimants" and Indoor

28   Ag-Con will be referred to as "Indoor Ag-Con" when appropriate.
[2] The parties agree that ECF No. 1-2 is an accurate copy of the agreement. ECF No. 1 at 2; ECF No. 18 at 3.

1

1    relation to the Purchase Agreement, Indoor Ag-Con signed a Secured Promissory Note

2    ("Promissory Note") in favor of NLRK and entered into a Security Agreement with NLRK. ECF

3    No. 1 at 3; ECF No. 18 at 4.[3] In addition, Indoor Ag-Con and NLRK entered into a Consulting

4    Agreement that set the terms of NLRK's consulting services for various events that Indoor Ag-

5    Con hosts.[4] ECF No. 1 at 4; ECF No. 18 at 6; ECF No. 1-5 at 2.

6         NLRK filed the initial complaint in this action, alleging that Individual Counterclaimants

7    breached the Purchase Agreement; Indoor Ag-Con breached the Promissory Note and Security

8    Agreement; NLRK has the right to obtain possession of the collateral for the Promissory Note; and

9    Indoor Ag-Con breached the Consulting Agreement. ECF No. 1 at 5–8. In response, Defendants

10   denied NLRK's allegations, raised twelve affirmative defenses, and filed a counterclaim and third-

11   party complaint containing eight claims against NLRK, Nicola Kerslake, and Contain, Inc.[5] ECF

12   No. 18. Defendants' counterclaims include: (1) breach of the Purchase Agreement; (2) breach of

13   the Consulting Agreement; (3) fraudulent misrepresentation or omission; (4) intentional

14   interference with prospective economic advantage; (5) theft of trade secrets in violation of NRS §

15   600A.010; (6) violation of the Computer Fraud and Abuse Act ("CFAA"); (7) violation of NRS §

16   205.4765; and (8) trespass to chattels. ECF No. 18 at 20–21.

17        NLRK moved to dismiss six of the counterclaims under Federal Rule of Civil Procedure

18   12(b)(6) ("Rule 12(b)(6)") and challenged the Defendants' standing to assert four of the

19   counterclaims under Rule 12(b)(1). ECF No. 24.

20   **II.    LEGAL STANDARD**

21   **A. Motion to Dismiss**

22        A party may seek the dismissal of a claim under Rule 12(b)(6) for "failure to state a claim

23   upon which relief can be granted." To survive a motion to dismiss, enough facts must be plead "to

---

[3] The parties agree that ECF No. 1-3 is an accurate copy of the Promissory Note and that ECF No. 1-4 is an accurate copy of the Security Agreement. ECF No. 1 at 3; ECF No. 18 at 4.

[4] The parties agree that ECF No. 1-5 is an accurate copy of the Consulting Agreement. ECF No. 1 at 4; ECF No. 18 at 6.

[5] In its motion to dismiss, NLRK stated "Procedurally, the third-party complaint is deficient because Counterclaimants/Third-Party Plaintiffs do not seek contribution, indemnity, or any other type of relief allowed under Rule 14 of the Federal Rules of Civil Procedure ('Rule')." ECF No. 24 at 2 n.2. However, the motion before the Court is brought by only NLRK. Accordingly, the Court will not address the counterclaims in relation to Nicola Kerslake or Contain, Inc.

1    state a claim to relief that [was] plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

2    570 (2007); *see also* Fed. R. Civ. P. 8(a)(2) (requiring "a short and plain statement of the claim

3    showing that the pleader is entitled to relief"). The plausibility standard requires the claimant to

4    plead "factual content that allows the court to draw the reasonable inference that the defendant is

5    liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility

6    standard is not akin to a probability requirement, but it asks for more than a sheer possibility that

7    a defendant has acted unlawfully." *Id.* at 678–79. Therefore, "[t]hreadbare recitals of the elements

8    of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678. The

9    court discounts these allegations because "they do nothing more than state a legal conclusion—

10   even if that conclusion is cast in the form of a factual allegation." *Moss v. U.S. Secret Serv.*, 572

11   F.3d 962, 969 (9th Cir. 2009). "In sum, for a [claim] to survive a motion to dismiss, the non-

12   conclusory 'factual content,' and reasonable inferences from that content, must be plausibly

13   suggestive of a claim entitling the plaintiff to relief." *Id.*

14         "Although generally the scope of review on a motion to dismiss for failure to state a claim

15   is limited to the Complaint, a court may consider evidence on which the complaint necessarily

16   relies if: (1) the complaint refers to the document; (2) the document is central to the plaintiffs'

17   claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6)

18   motion." *Daniels—Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010) (internal quotations

19   and citations omitted). The court may "treat such a document as "part of the complaint, and thus

20   may assume that its contents are true for purposes of a motion to dismiss under Rule

21   12(b)(6).'" *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006) (quoting *United States v. Ritchie*,

22   342 F.3d 903, 908 (9th Cir. 2003)).

23   **B. Leave to Amend**

24         Federal Rule of Civil Procedure 15(a)(2) allows a court to "freely give leave [to amend]

25   when justice so requires." Fed. R. Civ. P. 15(a)(2). The Ninth Circuit emphasizes that a court

26   should grant leave to amend "unless it determines that the pleading could not possibly be cured by

27   the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (quotation

28   omitted). This is consistent with the underlying purpose of Rule 15: "to facilitate decisions on the

1    merits, rather than on the pleadings or technicalities." *Id.* at 1127 (quotation omitted). Therefore,

2    leave to amend should be denied only if allowing the amendment would unduly prejudice the

3    opposing party, cause undue delay, be futile, or if the moving party has acted in bad faith.

4    *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008) (quoting *Foman v.*

5    *Davis*, 371 U.S. 178, 182 (1962)). In the District of Nevada, Local Rule 15-1(a) requires the party

6    seeking leave to amend to "attach the proposed amended pleading to a motion seeking leave of the

7    court to file an amended pleading."

8    **III.    DISCUSSION**

9         **A. NLRK's motion to dismiss Indoor Ag-Con's Counterclaims 1 and 3 and Individual**

10             **Counterclaimants' Counterclaims 2 and 5 for lack of standing is granted and leave to**

11             **amend is denied.**

12           NLRK argues and Defendants concede that Indoor Ag-Con lacks standing to assert

13   Counterclaims 1 and 3 and that Individual Counterclaimants lack standing to assert Counterclaims

14   2 and 5. ECF No. 24 at 5; ECF No. 31 at 7.

15           To have standing to assert a breach of contract claim, a party must be the recipient of the

16   promise or its intended third-party beneficiary. *Meritage Homes of Nev., Inc. v. FNBN-Rescon I,*

17   *LLC*, 86 F. Supp. 3d 1130, 1139, 1143 (D. Nev. 2015).

18           Counterclaims 1 and 3 address an alleged breach of the Purchase Agreement and alleged

19   fraudulent misrepresentation or omission in relation to that agreement. ECF No. 18 at 20, 23. The

20   Purchase Agreement was entered into by Individual Counterclaimants and NLRK. Indoor Ag-Con

21   was not a party to and does not claim to be an intended third-party beneficiary of the purchase

22   agreement. Further, the fraudulent misrepresentation or omission claim is addressing

23   communications directed at Individual Counterclaimants in relation to the Purchase Agreement. It

24   is not addressing any communication with Indoor Ag-Con. Thus, Indoor Ag-Con does not have

25   standing to assert a breach of contract claim or fraudulent misrepresentation or omission claim in

26   relation to the Purchase Agreement.

27           Counterclaims 2 and 5 address an alleged breach of the Consulting Agreement and the

28   alleged misappropriation of Indoor Ag-Con's trade secrets in violation of the Nevada Trade Secrets

4

1    Act. The Consulting Agreement was entered into by NLRK and Indoor Ag-Con. Individual

2    Counterclaimants were not parties to and do not claim to be intended third-party beneficiaries of

3    the agreement. Thus, Individual Counterclaimants do not have standing to assert a breach of

4    contract claim in relation to the Consulting Agreement. Further, Individual Counterclaimants

5    allege that NLRK misappropriated trade secrets belonging to Indoor Ag-Con. Because the trade

6    secrets belong to Indoor Ag-Con, not Individual Counterclaimants, they do not have standing to

7    assert the misappropriation of trade secrets claim.

8         Therefore, the Court holds that Indoor Ag-Con lacks standing to assert Counterclaims 1

9    and 3 and that Individual Counterclaimants lack standing to assert Counterclaims 2 and 5. Standing

10   deficiencies cannot be cured, making leave to amend futile. Accordingly, the Court denies the

11   request for leave to amend. Indoor Ag-Con may assert Counterclaims 2 and 5 and Individual

12   Counterclaimants may assert Counterclaims 1 and 3. Whether Counterclaims 1 and 3 should be

13   dismissed on other grounds is addressed below.

14   **B. NLRK's motion to dismiss Individual Counterclaimants' Counterclaim 1 is denied.**

15        Under Counterclaim 1, Individual Counterclaimants allege that Plaintiff breached the

16   Purchase Agreement by improperly and illegally accessing a confidential client list. ECF No. 18

17   at 20–21. Plaintiff moves to dismiss the counterclaim under Rule 12(b)(6) alleging that the

18   Purchase Agreement addresses only the purchase of NLRK's membership interest and does not

19   involve the transfer of an alleged confidential client list. ECF No. 24 at 8–9.

20        To sustain a breach of contract claim under Nevada law, a plaintiff must show "(1) the

21   existence of a valid contract, (2) a material breach by the defendant, and (3) damages as a result of

22   the breach." *Tarr v. Narconon Fresh Start*, 72 F. Supp. 3d 1138, 1141 (D. Nev. 2014).

23        The Court finds that Individual Counterclaimants plausibly pled the elements of a breach

24   of contract claim. They pled that (1) Individual Counterclaimants and NLRK entered into the

25   Purchase Agreement; (2) NLRK violated the agreement "by improperly and illegally accessing

26   Indoor Ag-Con's confidential client list" which was "an asset of Indoor Ag-Con's that transferred

27   with the execution and closing of the" agreement because Indoor Ag-Con's "confidential business

28   information" was the primary asset of the membership interest; and (3) Individual

1    Counterclaimants suffered damages because "the confidentiality and value of the client list has

2    been compromised and diminished." ECF No. 18 at 15, 20–21. The Court finds this pleading

3    sufficient to state a claim upon which relief may be granted.

4         Thus, NLRK's motion to dismiss Individual Counterclaimants' Counterclaim 1 is denied.

5    **C. Counterclaim 3 is dismissed and leave to amend is granted.**

6         NLRK seeks the dismissal of Counterclaim 3 on three grounds: (1) Nevada's UTSA

7    preempts the claim; (2) Defendants' claim is "a dressed up breach-of-contract claim"; and (3)

8    Defendants did not meet the requisite pleading standard for fraud claims. ECF No. 24 at 7–8, 9–

9    11, 11 n.4. The Court agrees that Defendants did not meet Rule 9(b)'s heightened pleading standard

10   for fraud claims and therefore does not reach the questions of whether Nevada's UTSA preempts

11   the claim and whether the claim is properly dismissed as a "dressed up breach-of-contract claim."

12        To state a claim for fraud, a plaintiff must allege three elements: (1) a false representation

13   that is made with either knowledge or belief that it is false or without sufficient foundation; (2) an

14   intent to induce another's reliance on such false representation; (3) justifiable reliance; and (3)

15   damages. *See Nelson v. Heer*, 123 Nev. 217, 163 P.3d 420, 426 (Nev. 2007). In addition, the

16   Federal Rules of Civil Procedure require that a claim of "fraud or mistake" be alleged "with

17   particularity" as to the "circumstances constituting [that] fraud or mistake." Fed. R. Civ. P. 9(b).

18   "In other words, the pleading 'must "identify the who, what, when, where, and how of the

19   misconduct charged, as well as what is false or misleading about the purportedly fraudulent

20   statement, and why it is false."'" *Depot, Inc. v. Caring for Montanans, Inc.*, 915 F.3d 643, 668

21   (9th Cir. 2019) (quoting *Salameh v. Tarsadia Hotel*, 726 F.3d 1124, 1133 (9th Cir. 2013)).

22        After reviewing Defendants' pleadings, the Court finds that they do not satisfy Rule 9(b)'s

23   heightened pleading standard. Several of Defendants' allegations are conclusory in nature and fail

24   to indicate how NLRK's actions were misleading or false, or how they induced reliance and what

25   reliance they induced. Such allegations do not meet the Rule 9(b) pleading standard. Additionally,

26   allegations of fraud based on information and belief will not usually satisfy Rule 9(b). *Zatkin v.*

27   *Primuth*, 551 F. Supp. 39, 42 (S.D. Cal. 1982). The Court recognizes that the Rule 9(b) pleading

28   requirement may be relaxed as to "matters peculiarly within the opposing party's knowledge" in

1    situations where plaintiffs cannot be expected to have personal knowledge of the facts prior to

2    discovery. *See, e.g., Wool v. Tandem Computers, Inc.*, 818 F.2d 1433, 1439 (9th

3    Cir.1987) (overruled on other grounds). In such cases, a complaint based on information and belief

4    is sufficient if it includes a statement of the facts upon which the belief is based. *Zatkin*, 551 F.

5    Supp. at 42. Here, however, Defendants provide no basis for their beliefs regarding NLRK's intent.

6    As such, these allegations are insufficient to meet the relaxed Rule 9(b) standard.

7        Therefore, the Court finds that Defendants have failed to sufficiently allege their fraud

8    claim and dismisses Counterclaim 3. Defendants have requested leave to amend their

9    counterclaim, but they have not satisfied Local Rule 15-1 by submitting an amended complaint for

10   the Court's review. The Ninth Circuit, however, directs the court to grant leave to amend unless

11   allowing the amendment would unduly prejudice the opposing party, cause undue delay, be futile,

12   or if the moving party has acted in bad faith. The Court will grant Defendants leave to amend the

13   counterclaim.

14   **D. Defendants' Counterclaim 4 is dismissed and leave to amend is granted.**

15       NLRK argues that Counterclaim 4 should be dismissed for three reasons: (1) Nevada's

16   UTSA preempts the claim; (2) Defendants failed to plausibly state a claim for intentional

17   interference with prospective economic advantage; and (3) Defendants consented to the dismissal

18   of Counterclaim 4 under Local Rule 7-2(d). The Court agrees that Defendants failed to plausibly

19   state a claim and therefore does not reach the questions of whether Nevada's UTSA preempts the

20   claim and whether Defendants consented to the dismissal of Counterclaim 4.

21       In Nevada, a party must plead five factors for an intentional interference with prospective

22   advantage claim:

23       (1) a prospective contractual relationship between the plaintiff and a third party; (2)

24       knowledge by the defendant of the prospective relationship; (3) intent to harm the

25       plaintiff by preventing the relationship; (4) the absence of privilege or justification

26       by the defendant; and (5) actual harm to the plaintiff as a result of the defendant's

27       conduct.

28

*Kahn v. Dodds*, 127 Nev. 196, 226 (2011) (quotation omitted). To establish the requisite intent to harm, a plaintiff "must show that the means used to divert the prospective advantage was unlawful, improper, or was not fair and reasonable." *Custom Teleconnect, Inc. v. Int'l Tele-Servs., Inc.*, 254 F. Supp. 2d 1173, 1181 (D. Nev. 2003) (citations omitted). Further, to allege actual harm, a plaintiff must allege that he "would have been awarded the contract but for the defendant's interference." *Bally Techs., Inc., v. Bus. Intel. Sols.*, No. 2:10-CV-004400-PMP-GWF, 2012 WL 3656498, at * 4 (D. Nev. Aug. 23, 2012). Finally, to sufficiently allege a claim for intentional interference with prospective business advantage, it is essential that the plaintiff plead facts showing that defendant interfered with plaintiff's relationship with a particular individual. *Damabeh v. 7-Eleven, Inc.*, No. 5:12-CV-1739-LHK, 2013 WL 1915867, at *10 (N.D. Cal. May 8, 2013). Allegations that a defendant interfered with the plaintiff's relationship with an unidentified customer are not sufficient, nor are general allegations that the plaintiff had ongoing expectations in continuing economic relationships with current or prospective customers. *Id.*

In its motion to dismiss, NLRK argues that Defendants have made conclusory statements in attempt to satisfy the factors. The Court agrees. Defendants used conclusory statements to allege the five factors of an intentional interference with prospective economic advantage claim but failed to include any factual elaboration to show how the factors are satisfied. For example, Defendants broadly allege that current and prospective contractual relationships exist and that NLRK interfered with them. However, Defendants failed to allege a specific relationship or a specific prospective customer relationship that NLRK allegedly interfered with. Such conclusory statements are not sufficient to state a claim upon which relief may be granted.

Therefore, the Court grants NLRK's motion to dismiss Counterclaim 4 and grants Defendants' request for leave to amend.

**E. Counterclaim 6 is dismissed and leave to amend is granted.**

NLRK argues that Defendants' counterclaim under the Computer Fraud and Abuse Act ("CFAA") should be dismissed for two reasons: (1) no private right of action exists for the CFAA claim because Defendants failed to plausibly allege any damage or loss, let alone $5,000 worth as

1  required by the statute and (2) even if they did adequately allege concrete damage or loss, they did

2  not plead sufficient facts to state claims under the CFAA.

3      Though primarily a criminal statute, the CFAA provides a civil cause of action for a party

4  "who suffers damage or loss by reason of a violation" of the CFAA. 18 U.S.C. § 1030(g). A civil

5  action may be entertained only if certain enumerated conduct is involved. *Id.* Here, the only

6  relevant enumerated type of conduct is that the conduct must have caused loss totaling at least

7  $5,000 in value during any one-year period. *Id.* at § 1030(c)(4)(A)(i)(I). Accordingly, to prove a

8  violation under the CFAA, Defendants must prove at least $5,000 in loss as well as the elements

9  of the particular subsection of the CFAA under which Defendants bring their claim.

10     NLRK first argued that a private right of action does not exist for Defendants' claim

11  because they did "not plausibly allege *any* 'damage or loss,' let alone $5,000 worth." ECF No. 24

12  at 11. In response, Defendants claimed they "cannot quantify an amount for damages, such as

13  consequential damages at this pleading stage" and that they "aver[] losses as irreparable losses and

14  no money can restore the losses due to the breach." ECF No. 31 at 10–11. Regardless, Defendants

15  asked for leave to amend to allege monetary losses exceeding $5,000. ECF No. 31 at 11.

16     The CFAA defines "loss" as "any reasonable cost to any victim, including the cost of

17  responding to an offense, conducting a damage assessment, and restoring the data, program,

18  system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or

19  other consequential damages incurred because of interruption of service." 18 U.S.C. § 1030(e)(11).

20  The CFAA defines "Damage," on the other hand, as "any impairment to the integrity or availability

21  of data, a program, a system, or information." *Id.* at § 1030(e)(8).

22     Upon review of Defendants' counterclaim, the Court finds that they have not plausibly

23  alleged a loss of at least $5,000 to give rise to a civil action under the CFAA. Defendants allege

24  that they "suffered damage and loss, including without limitation, (i) impairment to the integrity

25  and availability of Indoor Ag-Con's confidential client list; (ii) expenses involved in investigation

26  of Counterclaim/Third-party Defendants' improper and unauthorized access; and (iii) lost business

27  opportunities, profits and other damages in amounts to be determined at trial," and that the

28  "unlawful access to and theft" has caused "irreparable injury in that the confidentiality of the client

9

1   list has been compromised, and no amount of money can restore the breached confidentiality of

2   the client list." ECF No. 18 at 28–29. However, they have neither alleged that they suffered damage

3   or loss of at least $5,000 nor plead facts that would support such a conclusion. Defendants'

4   allegations are little more than conclusory statements without factual support. Thus, Defendants

5   have plainly failed to state a claim for relief under the CFAA.

6        NLRK also challenged Defendants' CFAA claim on the basis that Defendants failed to

7   plausibly plead the elements of a CFAA claim by "mechanically recit[ing] the basic sections of

8   CFAA" without providing factual enhancement about how NLRK violated the provisions. The

9   Court reviews each of the alleged violations below.

10       First, Defendants claim that NLRK violated Section (a)(2)(C), which makes it unlawful to

11   "intentionally access a computer without authorization or exceed authorized access, and thereby

12   obtain . . . information from any protected computer." Through incorporation by reference in ¶87,

13   Defendants pled that NLRK "accessed Indoor Ag-Con's client list on GetResponse at least nine

14   times" and obtained the list of clients, including clients added after the December 2018 sale;

15   provided relevant dates of the access; and pled that NLRK did not have permission through either

16   the Purchase Agreement or the Consulting Agreement for such access. ECF No. 18 at 18–20, 28–

17   29. The Court finds that this pleading is sufficient to state a violation of Section (a)(2)(C).

18       Next, Defendants argue that NLRK violated Section 1030(a)(4), which makes it unlawful

19   to "knowingly and with intent to defraud, access[] a protected computer without authorization, or

20   exceed[] authorized access, and by means of such conduct further[] the intended fraud and obtain[]

21   anything of value." In its motion to dismiss, NLRK argued that the heightened pleading standard

22   of Rule 9(b) applies to this CFAA claim because it is "ground in fraud." ECF No. 24 at 13.

23   Specifically, NLRK argues that Defendants did not "allege intent to defraud" with particularity.

24   ECF No. 24 at 13.

25       The majority of district courts in the Ninth Circuit that have addressed the issue require

26   claims under 18 U.S.C. § 1030(a)(4) to be pled with particularity under Rule 9(b) "when fraudulent

27   conduct is specifically alleged as the basis for the wrongdoing." *See, e.g., NetApp, Inc. v. Nimble*

28   *Storage*, 41 F. Supp. 3d 816, 834 (N.D. Cal. 2014); *see also Prop. Rts. Law Grp., P.C. v. Lynch*,

No. 13-00273 SOM/RLP, 2013 WL 479185, at \*4 (D. Haw. Sept. 6, 2013) (acknowledging that Rule 9(b) requires the "furthers the intended fraud" element of Section 1030(a)(4) to be pled with particularity); *Banc of Cal., NA v. McDonnell*, No. 18-01194 AG (ADSx), 2018 WL 8693922, at \*4 (C.D. Cal. 2018 Nov. 8, 2018) (requiring CFAA claims to be pled with particularity when they "are based on a unified course of fraudulent conduct" because such claims are "grounded in fraud"). However, under Rule 9(b) and Ninth Circuit precedent, the state of mind requirement, "intent to defraud," may be pled generally rather than with particularity. *See* Fed. R. Civ. P. 9(b); *Odom v. Microsoft Corp.*, 486 F.3d 541, 554 (9th Cir. 2007).

After reviewing Defendants' counterclaims and relevant case law, it appears to the Court that a heightened pleading standard would not be appropriate in this case. Cases that have applied the Rule 9(b) standard involved broad fraudulent schemes. For example, in *EWiz Express Corp. v. Ma Laboratories, Inc.*, a case that NLRK cited in support of the heightened pleading standard, the court found it appropriate to apply Rule 9(b) when "Defendants undertook a scheme to steal Plaintiff's customers and business by forming competing companies having misleadingly similar business names and internet domains" and intended to delete Plaintiff's website so they could not sell products. No. 15-CV-01213, 2015 U.S. Dist. LEXIS 131848 (N.D. Cal. Sept. 28, 2015) (quotation omitted). And in *Oracle America, Inc. v. Service Key, LLC*, it was alleged that a party "fraudulently induced customers of Oracle to cancel their support agreements with Oracle" and "falsely represented to its customers and potential customers that they could still obtain—from [DLT]—software patches and updates for their Oracle computer products[.]" No. C 12-00790 SBA, 2012 U.S. Dist. LEXIS 171406 (N.D. Cal. Dec. 3, 2012) (quotation omitted). In both cases, the claimant was alleging a unified course of fraudulent conduct that gave rise to the claim.

However, that does not appear to be the case here. Defendants merely pled that NLRK accessed the client list without permission and that NLRK gained access to the client list containing Indoor Ag-Con's contacts. They have not provided any factual context for their allegation that NLRK accessed it "knowingly and with intent to defraud" or that they furthered the intended fraud. Though Defendants did initially plead a fraudulent misrepresentation claim, it does not appear that they are alleging a connection between the fraudulent misrepresentation claim and the CFAA

11

claim. Without any factual elaboration, the Court cannot determine if Defendants are alleging a unified course of fraudulent conduct. However, the Court recognizes that Defendants' current pleading failed to sufficiently plead a violation regardless of what standard applies to the Section 1030(a)(4) claim because Defendants have failed to meet even the Rule 8 pleading standard.

Lastly, Defendants claim that NLRK violated both Sections 1030(a)(5)(B) and 1030(a)(5)(C), which make it unlawful to "intentionally access a protected computer without authorization, and as a result of such conduct," either (1) recklessly cause damage or (2) cause damage and loss. [6] Section 1030(a)(5) is disjunctive by nature, therefore, Defendants must plead sufficient facts to support that NLRK both "recklessly cause[d] damage" and "cause[d] damage and loss" if they desire to plead violations of both Subsection (B) and (C). As found above, Defendants have pled sufficient facts to support that NLRK "intentionally access[ed] a protect computer without authorization." However, they have failed to plead sufficient facts to support either that NLRK "recklessly cause[d] damage" or "cause[d] damage and loss." Defendants provided conclusory allegations without any factual support to show damage or loss. Because pleading that NLRK either "recklessly cause[d] damage" or "caused damage and loss" is essential to a CFAA claim under Sections 1030(a)(5)(B) and 1030(a)(5)(C), the Court finds that Defendants have failed to sufficiently plead a violation under either subsection.

For the reasons articulated above, the Court grants NLRK's motion to dismiss Counterclaim 6 and grants leave to amend.

**F. NLRK's motion to dismiss Counterclaim 7 is denied.**

NLRK contends that Defendants' counterclaim under NRS § 205.4765 should be dismissed because Defendants failed to plead facts sufficient to state a claim under the statute. ECF No. 24 at 14; ECF No. 32 at 6. In response, Defendants argue that their NRS § 205.4765 claim is similar to their CFAA claim and that they overemphasized that NLRK took and accessed the client list without authorization. ECF No. 31 at 11.

---

[6] The Court recognizes that Defendants pled their claims under 18 U.S.C. § 1030(a)(5)(A)(ii) and (iii). ECF No. 18 at 28. As NLRK points out, the numbers of the provisions pled were amended in 2008. ECF No. 24 at 11. However, the substantive portions of the relevant provisions remained the same. Therefore, the Court addresses the claim under the modern provision numbers, 18 U.S.C. § 1030(a)(5)(B) and 1030(a)(5)(C).

1  NRS § 205.4765(1) provides that it is unlawful for a person to knowingly, willfully and

2  without authorization (a) modify; (b) damage; (c) destroy; (d) disclose; (e) use; (f) transfer; (g)

3  conceal; (h) take; (i) retain possession of; (j) copy; (k) obtain or attempt to obtain access to, permit

4  access to or cause access to; (l) or enter, data, a program or any supporting documents which exist

5  inside or outside a computer, system or network. A victim of a crime under NRS § 205.4765 may

6  bring a civil action to recover damages and costs and reasonable attorney's fees incurred in

7  bringing the civil action. NRS § 205.511(1). Unlike the CFAA, NRS § 205.4765 does not require

8  a minimum monetary amount of loss to bring a civil action.

9  The Court finds that Defendants have plausibly stated a claim upon which relief may be

10  granted under NRS § 205.4765. Defendants pled that (1) NLRK "accessed Indoor Ag-Con's client

11  list on GetResponse at least nine times" and provided relevant dates; (2) NLRK did not have

12  permission through either the Purchase Agreement or the Consulting Agreement for such access;

13  and (3) NLRK used the information "to solicit new business and/or to otherwise wrongfully

14  advance their own interests," including by sending emails to Indoor Ag-Con's contacts acquired

15  after the December 2018 sale. ECF No. 18 at 18–20, 29–30. The Court finds this pleading sufficient

16  to state a claim upon which relief may be granted under NRS § 205.4765 and NRS § 205.511.

17  Accordingly, the Court denies NLRK's motion to dismiss Counterclaim 7.

18  **G. NLRK's motion to dismiss Counterclaim 8 is denied.**

19  NLRK argues that Defendants' trespass to chattels claim should be dismissed for three

20  reasons: (1) Nevada's UTSA preempts the claim; (2) Defendants failed to state a claim for trespass

21  to chattels; and (3) Defendants consented to the granting of NLRK's motion to dismiss the trespass

22  to chattels claim by failing to respond to the argument in their response brief. The Court finds that

23  Defendants have sufficiently stated a claim upon which relief may be granted.[7]

24  Trespass to chattels occurs when a person intentionally uses or intermeddles with a chattel

25  in possession of another. Restatement (Second) of Torts § 217 (1965). A person will be liable to

26

27  ---
[7] The Court does not reach NLRK's preemption argument because dismissal is premature at the pleading stage in the context of preemption and the scope of Nevada's UTSA. *ImageKeeper LLC v. Wright Nat'l Flood Ins. Servs. LLC*,

28  No. 2:20-cv-01470-GMN-VCF, 2021 WL 446631, at *5 (D. Nev. Sept. 29, 2021). In addition, the Court declines to dismiss the claim under Local Rule 7-2(d) at this stage of the proceedings.

the possessor of the chattel only if: "(a) he dispossesses the other of the chattel, or (b) the chattel is impaired as to its condition, quality, or value, or (c) the possessor is deprived of the use of the chattel for a substantial time, or (d) bodily harm is caused to the possessor, or harm is caused to some person or thing in which the possessor has a legally protected interest." *Id.* at § 218.

Defendants alleged that NLRK intentionally interfered with Indoor Ag-Con's support websites and internal databases and systems (such as GetResponse) and "caused damage to Indoor Ag-Con's rights to dominion and control over its property and . . . to the confidential and proprietary nature of the information." ECF No. 18 at 18–20, 30. Further, Defendants alleged that it caused the property "to diminish in value and deprived Indoor Ag-Con of the intended uses of its computer systems." ECF No. 18 at 30. The Court finds this pleading sufficient to state a claim upon which relief may be granted because Defendants alleged facts regarding NLRK's conduct and how it impaired the value and confidentiality of Defendants' information and support websites.

Accordingly, the Court denies NLRK's motion to dismiss Counterclaim 8.

///
///
///
///
///
///
///
///
///
///
///
///
///
///
///

**IV.    CONCLUSION**

IT IS THEREFORE ORDERED that NLRK's motion to dismiss (ECF No. 24) is granted in part as follows:

a.  Motion to dismiss Indoor Ag-Con's Counterclaims 1 and 3 and Individual Counterclaimants' Counterclaims 2 and 5 for lack of standing is GRANTED;

b.  Motion to dismiss Individual Counterclaimants' Counterclaim 1 under Rule 12(b)(6) is DENIED;

c.  Motion to dismiss Defendants' Counterclaims 3, 4, and 6 under Rule 12(b)(6) is GRANTED;

d.  Motion to dismiss Defendants' Counterclaims 7 and 8 under Rule 12(b)(6) is DENIED.

IT IS FURTHER ORDERED that Defendants' request for leave to amend Counterclaims 3, 4, and 6 is GRANTED. Defendants shall have 30 days from the entry of this Order to file an amended pleading.

IT IS SO ORDERED.

DATED this 31 day of January, 2022.

LARRY R. HICKS
UNITED STATES DISTRICT JUDGE

15